UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:22-CR-00580-MTS ) |
| DONYE PEACE, a/k/a "El Baggo," | ) ) |
| Defendant. | ) ) |

**GUILTY PLEA AGREEMENT**

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant Donye Peace, represented by defense counsel Michael A. Skrien, and the United States of America (hereinafter "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

**2. GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A) and (B), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts One, Two, Three, Six, Seven, and Nine of the Indictment, the Government agrees to move for dismissal as to Count Four at the time of sentencing. The Government also agrees that no further federal prosecution will be brought in this District relative to the defendant's drug trafficking, firearms dealing, and firearms use between August 17, 2022, and October 27, 2022, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that, in exchange for the agreements contained herein, the United States will recommend a sentencing within the applicable U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines, Title 18, United States Code, Section 3553, or any other provision or rule of law not addressed herein. Defendant remains free to recommend whatever sentence Defendant deems to be appropriate.

### 3. ELEMENTS:

As to Counts One, Two, Three, and Six, Defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(i) Defendant intentionally transferred cocaine to the undercover ATF Special Agent; and

(ii) At the time of the transfer specified in the Count, Defendant knew it was cocaine.

As to Count Seven, Defendant admits to knowingly violating Title 18, United States Code, Section 924(c), and further admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

(i) Defendant committed the crime of distributing cocaine as charged in Count Six; and

(ii) Defendant knowingly possessed a firearm in furtherance of that crime.

2

As to Count Nine, Defendant admits to willfully violating Title 18, United States Code, Section 922(a)(1)(A), and further admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

   (i)   Defendant was not licensed to deal firearms; and

   (ii)  Defendant willfully engaged in the business of dealing firearms.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the Government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

### Count One – Distribution of Cocaine

Between August 17, and August 19, 2022, an undercover special agent with the ATF communicated with Defendant Peace via text message at a phone number ending in 0995 about the undercover special agent purchasing cocaine. Special Agents with the ATF discovered Defendant Peace was dealing controlled substances after his publicly-available Instagram page included a hyperlink to a Telegram group chat page labeled, "Local Pharmacy." The "Local Pharmacy" page advertised controlled substances for sale and directed would-be purchasers to contact Defendant PEACE at the phone number ending in 0995.

After exchanging text messages with Defendant Peace, Defendant Peace and the undercover ATF agent arranged to meet on August 19, 2022, in St. Louis County, within the Eastern District of Missouri so that Defendant Peace could sell the undercover special agent 3.5 grams of cocaine for the agreed price of $325. At approximately 1:55 p.m. on August 19, 2022, Defendant Peace drove to the meeting spot and handed the undercover special agent a clear plastic baggie containing white powder substance. The undercover special agent handed Defendant Peace

$325 in U.S. Currency. The clear plastic baggie had a gross weight of 4.13 grams and the white powder within it tested positive for the presence of cocaine.

### Count Two – Distribution of Cocaine

Between August 23, and August 26, 2022, an undercover special agent with the ATF communicated with Defendant Peace via text message at a phone number ending in 0995 about the undercover special agent purchasing cocaine. The undercover special agent communicated with Defendant Peace over text message at phone number ending in 0995, which was the same number Defendant Peace used to arrange a sale of cocaine on August 19, 2022.

At approximately 1:30 p.m. on August 26, 2022, Defendant Peace arrived at the same location in St. Louis County, within the Eastern District of Missouri, used to conduct the August 19, 2022, transaction.

Co-defendant James sat in the front passenger seat of Defendant Peace's car. Defendant Peace handed co-defendant James an ammunition box. Co-defendant James handed the undercover special agent the same ammunition box. Defendant Peace then stated, "It's in the ammunition box." After the undercover special confirmed that the ammunition box contained a clear plastic baggie containing a white, powdery substance, the undercover special agent handed Defendant Peace $550 in U.S. Currency, which was the previously-agreed price for the cocaine.

The clear plastic baggie had a gross weight of 7.4 grams and the white powder within it tested positive for the presence of cocaine.

### Count Three – Distribution of Cocaine

Between August 29, 2022, and September 7, 2022, an undercover special agent with the ATF communicated with Defendant Peace via text message at a phone number ending in 0995

4

about the undercover special agent purchasing 14 grams of cocaine for $1,000 and a Glock pistol for $750.

On September 7, 2022, the undercover special agent arrived at the agreed upon location in St. Louis County, within the Eastern District of Missouri. At approximately 4:36 p.m., Defendant Peace arrived, driving the same vehicle he used during two previous transactions with the undercover special agent. Co-defendant Patterson was in the front passenger seat of Defendant Peace's car. When the undercover special agent stood at Defendant Peace's window, the undercover special agent observed that Defendant Peace had a black pistol resting on his lap. The undercover special agent observed that Co-defendant Patterson also had a black pistol on his lap.

Defendant Peace opened a black nylon Springfield Armory gun case and displayed a Glock, Model 23 Gen 5, .40 caliber pistol bearing serial number BXSH731; a Glock magazine; and a clear plastic baggie containing a white powder. The undercover special agent provided Defendant Peace a white plastic shopping bag so the Defendant Peace could conceal the gun and drugs. The undercover special agent also provided Defendant Peace with $1,750 in U.S. Currency.

As Defendant Peace counted the money, the undercover special agent asked about the firearms Defendant Peace and Co-defendant Patterson displayed. Defendant Peace responded, "We got a whole bunch of them."

After Defendant Peace finished counting the $1,750, Defendant Peace handed the undercover special agent the white plastic shopping bag that Defendant Peace placed the gun and drugs into. After the undercover special agent left and Defendant Peace and Co-defendant Patterson left, agents with the ATF tested the white powder. The clear plastic baggie had a gross weight of 14.3 grams and the white powder within it tested positive for the presence of cocaine.

<u>Count Six – Distribution of Cocaine</u>
<u>Count Seven – Possession of a Firearm in Furtherance of a Drug-Trafficking Crime</u>
<u>Count Nine – Dealing Firearms Without a License</u>

On September 11, 2022, Defendant Peace created a new Telegram group chat labeled, "LocalAmmunitions". Defendant Peace advertised that group chat on the previously-created "Local Pharmacy" group chat. In the "LocalAmmuntions" chat.

On September 15, 2022, an undercover special agent with the ATF communicated with Defendant Peace via text message at a phone number ending in 0995 about the undercover special agent purchasing $1,000 worth of cocaine and two firearms from Defendant Peace.

In advance of the meeting, special agents with the ATF set up surveillance near a residence on Mt. Everest Drive, which is an apartment with utilities in Co-defendant Patterson's name and from where Defendant Peace left prior to previous transactions. On September 15, 2022, Defendant Peace drove away from the residence in his same car used previously. Shortly thereafter, Defendant Peace texted the undercover special agent with an address on the 3200 block of Ohio Avenue along with a photograph of a location.

At approximately 1:53 p.m., the undercover special agent arrived and parked near the location provided by Defendant Peace. Defendant Peace and Co-defendant Bradford exited the residence on Ohio Avenue. Co-defendant Bradford was armed with an AR-15 variant pistol. Co-defendant Bradford stopped approximately 7-10 feet away from the undercover special agent's vehicle, but Defendant Peace continued and entered the passenger side of undercover special agent's vehicle with a brown paper bag. During the transaction, Co-defendant Bradford stood guard as Defendant Peace was inside the undercover special agent's car.

During the transaction, the undercover special agent provided Defendant Peace with $2,050 in U.S. Currency, accounting for $1,000 for the cocaine and $1,050 for the two firearms. In

6

exchange, Defendant Peace provided the undercover special agent with a clear plastic baggie containing a white powder; a Glock 45, 9mm caliber pistol bearing serial number BUEV907; and a Taurus G3C, 9mm caliber pistol bearing serial number ADA792948. The white powder tested positive for the presence of cocaine.

Co-defendant Patterson purchased the Glock 45 on September 10, 2022, which was five days prior to Defendant Peace's September 15, 2022, sale of that firearm.

### 5. **STATUTORY PENALTIES:**

Defendant fully understands that the maximum possible penalty provided by law for each of Counts One, Two, Three, and Six, to which Defendant is pleading guilty is imprisonment of not more than 20 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court shall also impose a period of supervised release of not less than three years.

Defendant fully understands that the maximum possible penalty provided by law for Count Seven, to which Defendant is pleading guilty is imprisonment of not less than five years and not more than life, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than five years. Defendant also fully understands that the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least five years consecutive to any other sentence imposed.

Defendant fully understands that the maximum possible penalty provided by law for Count Nine, to which Defendant is pleading guilty is imprisonment of not more than five years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than three years

In the event defendant is subject to any undischarged or anticipated term of imprisonment imposed by any court, defendant has been apprised by counsel that the sentence imposed in this case may be imposed consecutively to the undischarged or anticipated term of imprisonment.

## 6. U.S. SENTENCING GUIDELINES (2021 MANUAL):

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

### a. Chapter 2 Offense Conduct:

#### Counts One, Two, Three, and Six

**(1) Base Offense Level:** The parties agree that, as to Counts One, Two, Three, and Six, the base offense level is 12, as found in Section 2D1.1(c)(14). The parties agree that the quantity of cocaine for which the defendant is accountable, including relevant conduct, less than 50 grams resulting in the agreed Base Offense Level.

**(2) Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: None.

#### Count Seven

The parties agree that pursuant to Section 2K2.4, the guideline sentence for Defendant's conviction for Count Seven, possession of a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c) is the minimum term of imprisonment required by statute, which is 60 months in this case, unless Defendant is determined to be a Career Offender.

8

### Count Nine

(1) **Base Offense Level**: The parties agree that, as to Count Nine, the Base Offense Level is found in Section 2K2.1(a) and depends on, among other things, the nature of Defendant's criminal history and the characteristics of the firearms. The Base Offense Level may also be determined under Section 4B1.4 if Defendant is determined to be an Armed Career Criminal.

(2) **Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics do and do not apply as indicated below:

1. Pursuant to Section 2K2.1(b)(1), two levels are assessed because the between three and seven firearms.
2. Section 2K2.1(b)(2) does not apply.
3. Section 2K2.1(b)(3) does not apply.
4. Section 2K2.1(b)(4) does not apply.
5. Pursuant to Section 2K2.1(b)(5), four levels are assessed because Defendant engaged in the trafficking of firearms.
6. Section 2K2.1(b)(6)(A) does not apply.
7. Pursuant to Section 2K2.4, cmt. 4, Section 2K2.1(b)(6)(B) does not apply because Defendant is pleading guilty to a violation of Title 18, United States Code, Section 924(c).
8. Section 2K2.1(b)(7) does not apply.

b. **Chapter 3 Adjustments**:

(1) **Acceptance of Responsibility**: The parties agree that three levels should be deducted pursuant to Section 3E1.1(a) and (b), because Defendant has clearly demonstrated acceptance of responsibility and timely notified the Government of Defendant's intention to plead

9

guilty. The parties agree that Defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the Government receives new evidence of statements or conduct by Defendant which it believes are inconsistent with Defendant's eligibility for this deduction, the Government may present said evidence to the court, and argue that Defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

(2) **Other Adjustments:** The parties have no further agreement regarding any other adjustments.

d. **Estimated Total Offense Level:** The parties estimate that the Total Offense Level is dependent on, among other things, the nature of Defendant's criminal history and the characteristics of the firearm and whether Defendant is a Career Offender. Depending on the underlying offense and Defendant's criminal history, Defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds Defendant is a Career Offender, the Total Offense Level may be higher and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that Defendant is or is not a Career Offender.

e. **Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

f. **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen

all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement. The Government recognizes it is bound by the specific agreements made above but reserves the right to answer any questions the U.S. Probation Office or the Court might have related to sentencing or present evidence at the Court's request.

### 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** Defendant has been fully apprised by defense counsel of Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea, the constitutionality of the statutes to which Defendant is pleading guilty and whether Defendant's conduct falls within the scope of the statutes.

**(2) Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines agreements contained herein, and, after determining the applicable Sentencing Guidelines range, sentences Defendant within or below that range, then, as part of this agreement, Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, accepts the U.S. Sentencing Guidelines agreements contained herein, and after determining the appropriate Total Offense Level, sentences the defendant within or above that corresponding range

11

**b. Habeas Corpus:** Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8. OTHER:**

**a. Disclosures Required by the United States Probation Office:** Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the Government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against Defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon Defendant and may impose special conditions related to the crime defendant committed. These conditions will be restrictions on the defendant to which Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section

3583(e)(3), without credit for the time served after release. Defendant understands that parole has been abolished.

**d. Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $600, which Defendant agrees to pay at the time of sentencing. Money paid by Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e. Possibility of Detention:** Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f. Fines and Costs of Incarceration and Supervision:** The Court may impose a fine, costs of incarceration and costs of supervision. Defendant agrees that any fine imposed by the Court will be due and payable immediately.

**g. Forfeiture:** Defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon [his/her] interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant also agrees to the entry of a

13

forfeiture money judgment against the defendant and in favor of the Government in the amount of $4,675. Defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. Defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. Defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the Government and/or to rebut the claims of nominees and/or alleged third party owners. Defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that Defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the Government to prove the elements of the offenses charged against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. Defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

Defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the

proceeding. Defendant's counsel has explained these rights and the consequences of the waiver of these rights. Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the Government's evidence and discussed the Government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the Government's case and any defenses.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between Defendant and the Government, and no other promises or inducements have been made, directly or indirectly, by any agent of the Government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. Defendant further acknowledges that this guilty plea is made of Defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if Defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the Government, at its

15

option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the Government agrees to dismiss or not to bring.

11/2/2023
Date

C. RYAN FINLEN, #6505918 (IL)
Assistant United States Attorney

10-20-2023
Date

DONYE PEACE
Defendant

10-21-2023
Date

MICHAEL A. SKRIEN
Attorney for Defendant